UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-24148-BLOOM/Louis

NATHAN ROSA,

      Plaintiff,

v.

HARPER'S AIR, INC.,

      Defendant.

_____/

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Harper's Air, Inc.'s ("Defendant" or "Harper's Air") Motion for Partial Summary Judgment, ECF No. [56] ("Motion"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

### I.      BACKGROUND

This case involves allegations of intimidation, coercion, and eventual termination of Plaintiff Nathan Rosa ("Plaintiff" or "Rosa") by his employer Harper's Air as a result of Rosa's grand jury service. In the Complaint, ECF No. [1], Plaintiff alleges that the owner of Harper's Air, Terrell Lee Harper ("Harper"), was upset that Rosa responded to a summons for grand jury service in federal court, and Harper made intimidating and coercive comments to Rosa with respect to Rosa's service, culminating in Rosa's termination. As a result, Plaintiff asserts a claim against Defendant for violation of the Jury System Improvement Act ("JSIA"), 28 U.S.C. § 1875, which

prohibits an employer from discharging, threatening to discharge, intimidating or coercing permanent employees for performing jury service.

## II.      RELEVANT FACTS

Harper's Air employed Rosa as a service manager in an at-will capacity from 2015 until his termination on January 26, 2018. Defendant's Statement of Undisputed Material Facts ("Def.'s SOMF"), ECF No. [55] ¶¶ 1-2.[1]

During the week of September 11, 2017, a grand jury summons was mailed to Rosa. *Id.* ¶ 11. When Rosa failed to timely submit the grand juror questionnaire, the Court sent him a "No Response Letter" on October 27, 2017. *Id.* On November 1, 2017, the summons and questionnaire were reprinted and mailed to Rosa. *Id.* Thereafter, Rosa completed the eJuror Questionnaire online, and he was ultimately selected for federal grand jury service on November 9, 2017. *Id.* Rosa attended court as a juror on November 9, 2017, November 28, 2017, December 5, 2017, December 19, 2017, and January 9, 2017. *Id.* ¶ 13.

According to Harper, he was unaware that Rosa had received a federal grand jury summons when he decided to hire a recruiter to find a replacement for Rosa, and only learned of Rosa's grand jury obligations after Rosa had been selected to serve as a grand juror. *Id.* ¶ 14. Harper testified that he made the decision to terminate Rosa's employment because of deficient job performance, in that Rosa caused delays, he dropped units, he made bad decisions and forced employees to do things they should not do, he failed to process $80,000.00 of warranty returns, and did not complete paperwork in a timely manner so Harper's Air could bill. *Id.* ¶ 9; ECF No. [55-11] at 18. In addition, Rosa put the wrong unit on a Planet Dodge car dealership and ordered the wrong roof curb for a system being changed out, which cost $1,500.00 for the job plus cranes.

---

[1] Where a fact is uncontroverted by the opposing party, the Court cites only to the originating Statement of Facts.

ECF No. [55-11] at 19. Rosa also tried to set up a job for his wife's business shopping center without Harper's approval. *Id*. A recruiter was hired to find a replacement for Rosa on October 18, 2017, because Rosa's job performance was deficient, he caused Harper's company to incur monetary losses, and his customers were constantly complaining about Rosa's job performance. ECF No. [55-11] at 64; ECF No. [55-13] ¶ 4. Despite Rosa's stated deficiencies in job performance, no disciplinary record exists to document the alleged issues with Rosa's work performance. Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. [58] ¶ 7.

Kimberli Ann Sherwood, Harper's Air comptroller from late 2013 until June, 2016, testified that they received many complaints about scheduling and other incapabilities of the service department while Rosa worked as service manager. ECF No. [55-5] at 8. She also recalled discussing with Steve Simm, Harper's Air general manager at the time, that Rosa was not doing his job and was not going to be a good fit, and that Simm was looking for a replacement as soon as one could be found. *Id*. at 12. Michael Gibbs, the head service tech and installer of residential and commercial equipment, testified that there were instances in which Rosa performed his job in a deficient manner, including inaccurate job details and job instructions. ECF No. [55-6] at 8-9. For example, Gibbs testified that during a commercial install at a car dealership, he changed out a unit upon mistaken direction from Rosa, instead of changing out parts. *Id*. at 9. In addition, Gibbs recalled an instance at a job in a Bank of America where the details were given to Rosa, and when Gibbs proceeded to install the roof curve, all of the measurements were wrong. *Id*. at 11. Gibbs expressed his concerns to Sherwood[2] and Harper. *Id*. at 12. At a certain point in the months before Rosa's termination, Gibbs became aware of plans to replace Rosa. *Id*. at 13-14.

---

[2] In Gibbs's deposition, Sherwood is referred to by her maiden name, Parks. ECF No. [55-6] at 12; *see also* ECF No. [55-5] at 4.

Fernando Obeso, Harper's Air's general manager, testified that although Rosa received no write ups in his file, they received customer complaints about Rosa, including not responding to customers in a timely manner, ordering incorrect parts or equipment, failing to set up a job properly, and ordering items or performing services without company authorization. ECF No. [55-7] at 27-28. Marty Carter, one of Harper's Air's office managers during the relevant time period, testified that on her first day of work on October 15, 2017, Harper told her that he was going to fire Rosa for deficient job performance. Def.'s SOMF ¶ 8.

Martha Ravelo, who worked in human resources and as an accountant with Harper's Air until October 10, 2017, testified that Rosa gave her his jury summons, which she placed in his file. ECF No. [57-1] at 7-8. She also testified that she showed the summons to Harper and Obeso, and spoke to them about coverage for Rosa's responsibilities. *Id.* at 10. As a result, according to Ravelo, Harper was aware of Rosa's jury duty when he decided to find Rosa's replacement. Pl.'s SOMF ¶ 9. Harper was very unhappy about Rosa's jury duty. *Id.*

Ultimately, Harper hired Manuel Castellanos to replace Rosa, and terminated Rosa on January 26, 2018, after Castellanos, who had been training with Rosa and working side-by-side with him, told Harper that he did not need Rosa anymore. Def.'s SOMF ¶ 15.

## III.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*,

No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion.

## IV.    DISCUSSION

The JSIA provides in pertinent part that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a). An employer who violates this provision is liable for damages, and may be subject to injunctive relief and civil penalties. *See* 28 U.S.C. § 1875(b).

In the Motion, Harper's Air seeks summary judgment on Rosa's termination claim,[3] arguing that Harper made the decision to terminate Rosa and find his replacement before Rosa received the federal grand jury summons. In addition, Harper's Air argues that under the JSIA, Rosa may not recover damages for humiliation, embarrassment, and emotional pain and suffering. In response, Plaintiff argues that genuine issues of material fact remain as to whether and when Harper's Air became aware of Rosa's jury duty obligations, and that emotional distress damages are recoverable under the JSIA. The Court considers each argument in turn.

### A.  Under the JSIA, jury service must be the but-for cause for termination

At the outset, the Court notes that the parties disagree as to the causation standard applicable to JSIA claims. Harper's Air contends that an employee alleging termination as a result of jury service must prove that the jury duty was the "but-for" cause for the termination, relying upon *Crowley v. Pinebrook, Inc.*, No. 08-3427, 2010 WL 4963004, at *3 (D. Md. Dec. 1, 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Plaintiff, in turn, relies upon *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527-28 (11th Cir. 1991) to support the notion that jury service need only be one of the factors in the adverse employment action. Upon review, the Court

---

[3] Defendant does not seek summary judgment on Rosa's claims for coercion and intimidation under the JSIA.

agrees with Defendant that in order to show that a termination violated the JSIA, a plaintiff must prove that the jury service was the "but-for" cause of the termination.

In *Gross*, the United States Supreme Court considered whether a mixed-motives jury instruction was proper in a case involving alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* 557 U.S. at 169-70. Ultimately, however, the Court determined that the ADEA does not authorize a claim based upon mixed-motives discrimination in the first instance. *Id*. at 174. In so doing, the Court examined the text of the ADEA, which provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." *Id*. at 176 (quoting 29 U.S.C. § 623(a)(1)) (emphasis in original). The Court noted that, in "conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" *Id*. at 174 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008)).

Rosa focuses on the above language in isolation. Rosa argues that, unlike the ADEA, there is no clear textual difference between the JSIA and related statutes that would lead to the determination that "by reason of" in the JSIA must mean "but for," as the Supreme Court concluded "because of" in the ADEA means in *Gross*. However, in determining that the statutory language in the ADEA supports the notion that a plaintiff must prove that age is the "but-for" cause of an employer's adverse decision, the Supreme Court noted that "[t]he words 'because of' mean 'by reason of: on account of'" – the very language used in the JSIA, which prohibits discharge "by reason of" an employee's jury service. *Id*. at 176; 28 U.S.C. § 1875(a). "Thus, the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that

age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. In this case, the analogous reasoning applies.

Indeed, although the Eleventh Circuit has not spoken directly to the standard of causation applicable to violations of the JSIA, several other courts have concluded that the jury service must be the "but-for" cause of an employer's adverse action in a case alleging violations of the JSIA. *See Rogers v. Bromac Title Servs, L.L.C.*, 755 F.3d 347, 352 (5th Cir. 2014); *Hackney v. Jack Daubert, M.D., P.A.*, No. 11-80856-CIV, 2012 WL 1600563, at *8 (S.D. Fla. May 7, 2012); *Williams v. Dist. of Columbia*, 646 F. Supp. 2d 103, 109 (D.D.C 2009); *Crowley v. Pinebrook, Inc.*, No. CIV JKS 08-3427, 2010 WL 4963004, at *3 (D. Md. Dec. 1, 2010), *aff'd* 439 F. App'x 232 (4th Cir. 2011), *cert. denied* 566 U.S. 1198 (2012); *Hill v. Hubbell Distrib., Inc.*, No. 1:12cv51, 2013 WL 1726562, at *6 (W.D.N.C. Apr. 19, 2013); *Papalia v. Milrose Consultants, Inc.*, No. 09 Civ. 9257(NRB), 2011 WL 6937601, at *12 (S.D.N.Y. Dec. 29, 2011); *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 Civ. 7932(DLC), 2011 WL 2416877, At *3 (S.D.N.Y. June 16, 2011).

Plaintiff's reliance upon *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527-28 (11th Cir. 1991) for support is misplaced. In *Hill*, the district court granted a conditional new trial in part based upon what it considered to be an erroneous jury instruction. The court charged the jury that, to prevail on the issue of JSIA liability, the plaintiff had to prove that jury service was a factor, instead of a "substantial, determining or motivating factor," in the employer's adverse actions. 934 F.2d at 1527. On appeal, the Eleventh Circuit disagreed with the district court's assessment, noting that "[c]onsidering the jury instructions, special verdict, and the record as a whole, we find that the jury concluded that the cause of [ ] discrimination was Hill's jury service." *Id.* 1528. Rather than support the view that jury service need only be a factor for an employer's adverse action in a JSIA case, the Eleventh Circuit's ultimate conclusion in *Hill* was that Hill's jury service was the

but-for cause of discrimination. Plaintiff points to no other authority to suggest that his proffered interpretation of causation under the JSIA would be logical or proper. As such, under the JSIA, a plaintiff must show that his jury service was the but-for cause of his termination.

**B. Genuine issues of material fact remain regarding Harper's knowledge of Rosa's jury service**

Defendant argues that because Harper made the decision to terminate Rosa for deficient job performance before Rosa received the grand jury summons and before he informed anyone at Harper's Air that he received the summons, Harper's Air is entitled to summary judgment on Rosa's termination claim. Defendant points to record evidence in the form of testimony from various witnesses, including Sherwood, Gibbs, Obeso, and Harper, to support the argument that because Rosa had job performance issues, he cannot show that jury service was the but-for cause of his termination. In response, Plaintiff points to testimony from Ravelo and Rosa to support the fact that Harper was aware of Rosa's jury service obligations prior to making the decision to terminate Rosa.

Upon review, the Court finds that genuine issues of material fact preclude the entry of summary judgment in favor of Harper's Air. Indeed, the issue of whether and when Harper had knowledge of Rosa's jury service obligations is a factual question turning upon the credibility of witnesses, which is not appropriate for resolution as a matter of law.

The following are the undisputed facts regarding the timing of events. A grand jury summons was created for Rosa on September 5, 2017. Affidavit of Irma E. Chapas ("Chapas Aff."), ECF No. [55-14] ¶ 3. The summons was mailed to Rosa during the week of September 11, 2017. *Id.*; Def.'s SOMF ¶ 11. When Rosa did not timely submit his grand jury questionnaire, he was sent a "No Response Letter" on October 27, 2017. Chapas Aff. ¶ 3; Def.'s SOMF ¶ 11. The summons and questionnaire were reprinted and mailed to Rosa on November 1, 2017, and Rosa

completed the online eJuror Questionnaire on November 1, 2017. *Id.* Rosa reported for jury service on November 9, 2017. *Id.* Harper hired Pamela Wallace from a recruiting firm to find a replacement for Rosa on October 18, 2017. Def.'s SOMF ¶ 10. Rosa was terminated on January 9, 2018. Def.'s SOMF ¶ 1. Thus, it is undisputed that Harper made the decision to find a replacement for Rosa after the first summons was sent to Rosa the week of September 11, 2017, and before Rosa began his grand jury service on November 9, 2017.

While Defendant maintains that the decision to find a replacement for Rosa was based upon deficient job performance, Ravelo, who handled human resources functions at Harper's Air until her employment ended on October 10, 2017, stated that Rosa submitted a time off request for attendance at jury duty, and that she showed the request to Harper and Obeso before placing the request into Rosa's personnel file. Affidavit of Martha Ravelo ("Ravelo Aff."), ECF No. [57-2] ¶¶ 5-6. This is consistent with Rosa's recollection that he told Ravelo about the summons and provided her with a copy of the summons when she was the office manager. ECF No. [55-2] at 14-15, 21-22. In addition, Rosa testified that he and Ravelo spoke to Obeso about the summons. *Id.* at 22. Accordingly, a reasonable fact finder could determine that, contrary to Defendant's assertions, Harper was aware of Rosa's jury service obligations prior to making the decision to find a replacement. Because such a determination depends upon the credibility of the witnesses, this issue is not suitable for resolution upon a motion for summary judgment.[4]

### C. Emotional distress damages are not available under the JSIA

Harper's Air argues that it is entitled to summary judgment on Rosa's claim for damages for humiliation, embarrassment, and emotional pain and suffering, because the JSIA does not provide for the recovery of non-economic damages for mental pain and suffering. In response,

---

[4] Based upon this determination, the Court need not consider at this juncture the impact of the apparent loss of Rosa's personnel file.

Rosa urges the Court to interpret the relief specifically provided under the JSIA broadly in keeping with the interpretation given to the retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

With any question of statutory interpretation, the Court presumes that Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992) (citing *United States v. Ron Pair Enterps., Inc.,* 489 U.S. 235, 241-42 (1989)) (further citations omitted). "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *U.S. v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd— is to enforce it according to its terms.") (internal quotation and citation omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC,* 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *U.S. v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002)) (alterations in the original). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). In any event, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798).

With respect to available remedies, the JSIA provides as follows:

Any employer who violates the provisions of this section—

    (1) shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason of such violation;

    (2) may be enjoined from further violations of this section and ordered to provide other appropriate relief, including but not limited to the reinstatement of any employee discharged by reason of his jury service; and

    (3) shall be subject to a civil penalty of not more than $5,000 for each violation as to each employee, and may be ordered to perform community service.

28 U.S.C. § 1875(b). In arguing that the statute does not authorize emotional distress damages such as those sought by Rosa, Harper's Air relies upon *Shea v. County of Rockland*, 810 F.2d 27 (1987), which Rosa acknowledges to be the only appellate court case to have directly addressed the issue of non-monetary compensatory damages. In *Shea*, the Second Circuit concluded that the purpose of subsection (b)(1) of the JSIA "was to provide only for compensatory damages for the economic loss of wages or other employment related benefits," and therefore, that the JSIA does not authorize damages for emotional distress. 810 F.2d at 29.

Rosa argues nevertheless that the "other appropriate relief" language in subsection (b)(2) should include emotional distress damages. However, the Second Circuit explicitly rejected the argument that "other appropriate relief" in subsection (b)(2) could encompass compensatory damages, since the language in that subsection otherwise refers to injunctive relief. *Id.* This is entirely consistent with the principle of *ejusdem generis*, which requires that a general statutory term be interpreted in light of specific surrounding terms. *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1259 n.21 (11th Cir. 2019). The Court agrees with the Second Circuit's conclusion in *Shea*, and sees no reason to engage in further analysis, as the language of the statute is clear. Plaintiff points to no case law—nor has the Court found any—supporting his suggested interpretation of the JSIA. Indeed, "[i]nferring remedies that Congress never contemplated both

disturbs the constitutional balance by arrogating law-making power to the judiciary, and also allows legislators to escape their responsibility by enlisting judges as supplemental draftsmen." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 939 (11th Cir. 2000) Therefore, absent a clear indication that emotional distress damages be recoverable for violations of the JSIA, the Court will not interpret the statute to encompass such damages.

As such, Harper's Air is entitled to summary judgment upon Rosa's claim for damages for humiliation, embarrassment and emotional pain and suffering.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Harper's Air's Motion, **ECF No. [56]**, is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 29, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record